UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **JULIA COLLINS** | ) | |
| | ) | |
| **Plaintiff** | ) | Case Number: |
| | ) | |
| vs. | ) | |
| | ) | |
| **TURNING POINT SOLUTIONS, LLC** | ) | CIVIL COMPLAINT |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| **Defendant** | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

**COMES NOW**, Plaintiff, Julia Collins, by and through her undersigned counsel, Brent F. Vullings, Esquire of Vullings Law Group, LLC, complaining of Defendant, and respectfully avers as follows:

### I.   INTRODUCTORY STATEMENT

1.  Plaintiff, Julia Collins, is an adult natural person and she brings this action for actual and statutory damages and other relief against the Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices, as well as Invasion of Privacy by Intrusion into Private Affairs.

### II.   JURISDICTION

2.  Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

3. Venue in this District is proper in that Defendant maintains a primary location in this District.

### III. PARTIES

4. Plaintiff, Julia Collins, (hereafter, Plaintiff) is an adult natural person residing in Skiatook, OK 74070. At all times material and relevant hereto, Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a (3).

5. Defendant, Turning Point Solutions, LLC (hereafter, Defendant), at all times relevant hereto, is and was a limited liability company engaged in the business of collecting debt within the States of Oklahoma and New York, with a primary location at 3221 Southwestern Blvd., Suite 120, Orchard Park, NY 14217.

6. Defendant is engaged in the collection of debts from consumers using the telephone and mail. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

### IV. FACTUAL ALLEGATIONS

7. In or around January, 2015, Plaintiff started to receive constant and continuous calls from Defendant demanding payment on an alleged past due medical bill.

8. During the initial call, Plaintiff was informed by a male agent of the Defendant that she owed an outstanding balance of approximately $14,000.00 on an account that she had not paid on since 2008.

9. Plaintiff was confused by the amount that the Defendant was demanding, as she was certain that the amount due was under $6,000.00.

10. Defendant's male agent said that he would speak with his supervisor to see if there was anything that could be done to lower the interest that had accumulated on the account.

11. Plaintiff was put on hold for a short time, and then was transferred to a supervisor of the Defendant by the name of "Justin Yenner".

12. "Justin Yenner", immediately became irate with the Plaintiff wanting to know why she had not taken care of this debt since 2008 and assured her that they could not lower the outstanding amount for her.

13. Defendant's supervisor further demanded to know if the Plaintiff understood the contract that she had signed when she first opened this account.

14. Plaintiff asked how the Defendant could be collecting on an alleged account that is at least six (6) years old and most likely past the statute of limitations in her state.

15. Defendant's supervisor "Justin Yenner", refused to respond to the Plaintiff.

16. Plaintiff was again asked why she had not yet paid off this debt and what was she going to do to get in taken care of.

17. At that time, Plaintiff offered to make monthly payment towards the account until it was paid off.

18. Plaintiff offered to make payments of $100.00.

19. "Justin Yenner", quickly declined the offer, chastising the Plaintiff that with payments like that she would be paying until the end of time.

20. Plaintiff then offered to make payments of $250.00 monthly, but stating that she could not afford anything more.

21. At that, Defendant's supervisor, "Justin Yenner", replied that they only way they would accept payments that low is if Plaintiff was making them every two (2) weeks.

22.     "Justin" then demanded an immediate down payment of $1,300.00 followed by monthly payments of $500.00.

23.     Plaintiff was warned that if she didn't agree to this payment arrangement that the Defendant would see her in court.

24.     Plaintiff told the Defendant that she could not afford to agree to that arrangement and could not make such payments.

25.     "Justin", then offered to lower the balance to $10,000.00, but only if the Plaintiff agreed to make the $1,300 payment right then and there.

26.     Plaintiff declined.

27.     Plaintiff was again threatened with court for nonpayment.

28.     On or about January 13, 2015, Plaintiff received a call from Defendant's agent, "Patrick" from number 888-789-3215.

29.     "Patrick", stated that he was aware that the Plaintiff had spoken with their office, but that they could not agree to terms on a settlement with her, because she could not offer them anything acceptable.

30.     Plaintiff was told that if she could just agree to a nice large down payment they would be willing to work with her and put her on a decent payment plan.

31.     "Patrick" then continued by stating that if the Plaintiff didn't agree to anything that the Defendant would have to "render a decision on her behalf, without her knowledge".

32.     Defendant continued by seemingly threatening legal action, by telling the Plaintiff that if she did not make payment on this account the Defendant would have to "go ahead with due diligence on this process".

33. Plaintiff was warned that the Defendant was trying to give her fair opportunity outside of a "legal setting" and wished her the best of luck before ending the call.

34. On or about January 14, 2015, Defendant's agent, "Patrick", called the Plaintiff again demanding to know if she had made a decision yet on payment.

35. At no time, since the Defendant started contacting the Plaintiff has she ever been informed of her rights to dispute this alleged debt.

36. As of the filing of this complaint, the Defendant has not sent the Plaintiff anything in writing in regards to this matter, including the initial thirty (30) day notice.

37. Plaintiff has never been informed who the original creditor is on this alleged account.

38. Defendant's despicable tactics to try and get the Plaintiff to make payment were nothing more than ways to instill fear of impending legal action if the Plaintiff did not agree to enter into outrageous payment arrangements that would be clearly unattainable in just a few days.

39. The Defendant acted in a false, deceptive, misleading and unfair manner when they engaged in conduct the natural consequences of which is to harass, oppress, or abuse such person in connection with the collection of a debt.

40. The Defendant knew or should have known that their actions violated the FDCPA. Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

41. At all times pertinent hereto, the Defendant was acting by and through their agents, servants and/or employees, who were acting with the scope and course of their employment and under the direct supervision and control of Defendant herein.

42. At all times pertinent hereto, the conduct of Defendant, as well as their agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

43. As a result of Defendant's conduct, Plaintiff has sustained actual damages, including, but not limited to, injury to Plaintiff's reputation, invasion of privacy, damage to Plaintiff's credit, out-of-pocket expenses, physical, emotional and mental pain and anguish and pecuniary loss and she will continue to suffer same for an indefinite time in the future, all to her great detriment and loss.

## **COUNT I – FDCPA**

44. The above paragraphs are hereby incorporated herein by reference.

45. At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by Plaintiff for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

46. The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to, violations of:

   §§ 1692d: Any conduct the natural consequence of which is to harass, oppress, or abuse any person

   §§ 1692d(5): Caused the phone to ring or engaged any person in telephone conversations repeatedly

| | | |
|---|---|---|
| §§ 1692e: | | Any other false, deceptive, or misleading representation or means in connection with the debt collection |
| §§ 1692e(2): | | Character, amount or legal status of the alleged debt |
| §§ 1692e(5): | | Threaten to take any action that cannot legally be taken or that is not intended to be taken |
| §§ 1692e(8): | | Threatens or communicates false credit information, including the failure to communicate that the debt is disputed |
| §§ 1692e(10): | | Any false representation or deceptive means to collect a debt or obtain information about a consumer |
| §§ 1692f: | | Any unfair or unconscionable means to collect or attempt to collect an alleged debt |
| §§ 1692g: | | Failure to send 30-day validation notice within five days of the initial communication |
| §§ 1692g(a)(2): | | Must state the name to whom the debt is owed |
| §§ 1692g(a)(3): | | Must state the right to dispute a debt within 30 days |

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against the Defendant for the following:

a. Actual damages;

b. Statutory damages pursuant to 15 U.S.C. § 1692k;

c. Reasonable attorney's fees and litigation expenses, plus costs of suit; and

d. Such additional and further relief as may be appropriate or that the interests of justice require.

## COUNT II

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

47. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

48. The Restatement of Torts, Second, § 652(b) defines intrusion upon seclusion as, "One who intentionally intrudes…upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

49. Oklahoma further recognizes the Plaintiff's right to be free from invasions of privacy, thus the Defendants violated Oklahoma state law.

50. The Defendant intentionally intruded upon the Plaintiff's right to privacy by continually harassing the Plaintiff with numerous calls.

51. The conduct of the Defendant in engaging in the illegal collection activities resulted in multiple invasions of privacy in such a way as would be considered highly offensive to a reasonable person.

52. As a result of the intrusions and invasions, the Plaintiff is entitled to actual damages in an amount to be determined at trial from the Defendant.

53. All acts of the Defendant were committed with malice, intent, wantonness, and recklessness, and as such, the Defendant is subject to punitive damages.

**WHEREFORE** Plaintiff prays this Honorable Court enter judgment in their favor and against Defendant, and Order the following relief:

    a.    Actual damages

    b.    Statutory damages

  c. An award of reasonable attorney's fees and expenses and cost of suit; and

  d. Such additional relief as is deemed just and proper, or that the interest of justice may require.

## V. <u>JURY DEMAND</u>

Plaintiff hereby demands a jury trial as to all issues herein.

      **Respectfully submitted,**

      **VULLINGS LAW GROUP, LLC**

**Date: January 22, 2015**

      **BY: /s/ *Brent F. Vullings***
      Brent F. Vullings, Esquire
      3953 Ridge Pike
      Suite 102
      Collegeville, PA 19426
      P: 610-489-6060
      F: 610-489-1997
      Attorney for Plaintiff
      bvullings@vullingslaw.com